The Fourth District Appellate Court of the State of Illinois has now convened. The Honorable John W. Turner presiding. Thank you. Good morning, everyone. This is case number 4-2-2-0-4-7-0. Sarah Sachin and others versus Illinois State Board of Elections et al. Would counsel for the appellant please identify yourself for the record? Yes. Jacob Hubert for the appellants. And for the appellee? Alex Hemmer for the appellees. Excellent. Mr. Hubert, you may proceed with your argument. Thank you. May it please the court? This court should reverse the circuit court's denial of the appellant's petition for leave to file a taxpayer action for three reasons. First, taxpayers have standing to challenge proposed constitutional amendments that are themselves unconstitutional. Second, the petitioner's action has merit because the proposed Amendment 1 is preempted by the National Labor Relations Act and therefore violates the supremacy clause of the U.S. Constitution. Third, placing Amendment 1 on the ballot would perpetrate a fraud on the voters because the amendment tells voters that it would give rights to all employees when in fact the amendment would actually give rights to public sector employees and not the overwhelming majority of Illinois employees who are in the private sector whose collective bargaining rights are governed by the NLRA. Illinois taxpayers have standing to seek an injunction to keep an unconstitutional amendment off the ballot. We know that because taxpayers have done so repeatedly and successfully at the Illinois Supreme Court in cases such as Chicago Bar Association and Hooker. Taxpayers have been able to bring such lawsuits because of Illinois' broad taxpayer standing doctrine. Illinois case law allows taxpayers to sue to enjoin any misuse of public funds, including the use of public funds for an unconstitutional purpose. Taxpayers can do that even if the amount of public funds at stake is low, and they can do that even if the law they're challenging doesn't directly apply to them. The reason taxpayers have standing is because the use of public funds for an unconstitutional purpose injures them. The Illinois Supreme Court has said that taxpayers are the equitable owners of public funds. And if public funds are misused, taxpayers are injured because they're the ones who will have to replenish the Treasury for the misused money. Mr. Hoover, may I interrupt you at this point and ask you, how is it that the Illinois Supreme Court's decision in Fletcher does not control in this situation? Why is this not a constitutionally authorized election, and why wouldn't it be considered judicial interference in a constitutionally authorized election under these circumstances? Your Honor, the Fletcher decision is rooted in premises that have been rejected in Illinois case law. One of its premises is that the injury that taxpayers would suffer from putting something unlawful on the ballot is too trifling. The amount of money involved would be too trifling. Has a case ever specifically stated that they're rejecting that premise in Fletcher? The Chicago Bar Association case recognizes that there is an exception to Fletcher's general rule for proposed constitutional amendments that are themselves unconstitutional. And Fletcher also said that courts never enjoined the holding of election. That was another premise. But again, we see in the Chicago Bar and Hooker cases that sometimes they do if a proposed amendment is unconstitutional. So Fletcher is outdated in these ways, and it relies on premises that have been repeatedly rejected in the case law. May I ask you, if this pre-election challenge did not exist, and the amendment were challenged post-election, that would likely end up with some part of the amendment still effective. Do you agree with that? Well, a court in that situation would have to conduct a severability analysis to determine whether the measure would have been enacted if the unconstitutional provision hadn't been in there. And that's something we haven't addressed here. So it's possible that parts of it would stand in that situation, or it's possible that it would all fall in that situation. Except a severability analysis doesn't necessarily apply when it's a question of preemption, correct? The parties haven't briefed that question, I think. But if part of a statute or amendment or any kind of provision is declared to be unconstitutional, courts may conduct a severability analysis to determine whether the rest of it stands. And of course, a supremacy clause violation arising out of federal preemption is not fundamentally different from any other kind of constitutional violation. The U.S. Supreme Court has said that a law that is preempted by federal law is invalid. And that's what we say about anything that violates any provision of the U.S. Constitution. It's invalid. And when part of a statute or law is invalidated, courts then proceed to conduct a severability analysis. But you concede that as applied to public sector employment, this amendment, if it were limited to that, could be valid. Yes, if the amendment said that it was giving rights to public sector employees specifically, then we wouldn't have this constitutional problem because the NLRA does not govern public sector labor relations and doesn't preempt laws on that. So putting aside any preemption, I'm sorry, any severability discussion until some subsequent challenge, it's very possible that part of this amendment would be left standing. And if that's the case, why are you entitled to knock it all down now? The petitioners are entitled to do so because part of this amendment is unconstitutional and they have a right to not have their tax money used for an unconstitutional purpose. But it's not wholly unconstitutional. You're arguing part of it is. Do you have any authority that says when part of the initiative would be unconstitutional, it is a taxpayer standing issue to challenge it pre-election? There's no case law in Illinois that's addressed that question. But the issue is that taxpayers are still injured when they're forced to put something unconstitutional on the ballot. And there's nothing to suggest that in proposing an amendment, the General Assembly can protect it, something unconstitutional from a challenge by bundling it together with other things that are unconstitutional. Are they injured from not having the opportunity to vote on the section of the amendment, which is likely constitutional? No, taxpayers aren't injured by that. Of course, the General Assembly could propose an amendment that didn't contain the unconstitutional portion and then put that on the ballot and voters could vote on it. But as long as they've put something unconstitutional in there, in the primary provision of this law that would be unconstitutional in the overwhelming majority of its applications, this injures taxpayers and their injury isn't eliminated by the presence of other things in the proposed amendment that are constitutional or would be constitutional standing alone. But in Chicago Bar and in Hooker, it was an all or nothing proposition. Either all of it was good or all of it was bad. That's correct, Your Honor. The issue in that case was whether the proposed amendments strayed outside the structural and procedural topics that are permitted for a citizen-initiated amendment under Article 14, Section 3 of the Illinois Constitution. And some of the things in those proposed amendments did pertain to those topics and some of them didn't. And the fact that some of them didn't was a reason to keep it off the ballot. The court didn't say, well, if you only do these things, it would be okay, so we should let it go on the ballot and then we can strike out some provisions of it later. It did all go down together. Mr. Hoover, this issue of preemption, it's secondary in the analysis to the primary issue, which is if this court found that Article 14 requirements for placing the initiative on the ballot, if the requirements were followed, then you don't even get to that second question that we're talking about here, right? I mean, what is it that was not followed? What is not being followed by Amendment 1 in regards to Article 14 requirements for amendment? The Article 14 procedures were followed. The problem is that the amendment is substantively unconstitutional. And it's your position that no matter that the procedures required by Article 14, in those circumstances where they have been followed to a T, that if there is a question then raised as to the constitutionality of the substance of what is contained in the amendment, it can be reached by the court prior to being placed on the ballot and can be prevented from being placed on the ballot. That's the sum and substance of your argument. Is that right? That's correct, Your Honor. Okay, thank you. And of course, the respondents argue that the constitutional challenges in those other cases were different because they were based on the rule in Article 14, Section 3, that amendments proposed by a citizen initiative can only pertain to certain structural and procedural topics related to the legislature. But that difference is irrelevant to taxpayers' standing because taxpayers are injured by the use of their money for any unconstitutional purpose. And Article 14, Section 3, includes a substantive limit that applies specifically to constitutional amendments proposed by a citizen initiative. But of course, the state constitution and the federal constitution impose other limits on the content of amendments. Under the First and Fourteenth Amendments of the U.S. Constitution, you couldn't amend the state constitution to prohibit criticism of the governor. You couldn't amend the state constitution to authorize discrimination based on race. But the respondents' view here is that actually, taxpayers wouldn't be injured at all if the state put those kinds of measures on the ballot. In the respondents' view, taxpayers definitely suffer an injury when their fellow citizens use the initiative process to propose an amendment to reform the legislature that strays outside substantive and procedural topics. But a taxpayer wouldn't suffer any injury at all if the General Assembly presented an amendment to prevent them from criticizing the government or an amendment that would allow the government to discriminate against them based on their race. And that doesn't make sense. As a matter of common sense, I think we can reasonably assume that most taxpayers would consider themselves much more aggrieved by the use of their tax money to put a measure on the ballot that would violate their fundamental constitutional rights. Much more so than by a proposal that strays outside the structural and procedural rule. Well, why wouldn't the courts address that after it's been put on the ballot and approved, if it is approved? That's when the courts would get involved. It's the way I see it. Where am I going wrong here? Well, of course, they could challenge it after it was enacted. But then that's also true of an amendment that violates the structural and procedural rule. There's no reason why a challenge to such an amendment would have to be brought before an election rather than after an election. Well, the reason would be the Fletcher case, wouldn't it? I'm sorry, Your Honor, I'm not sure I understand. The case law. Isn't that what the case law says in the Illinois Supreme Court? We're not supposed to give advisory opinions. We're not supposed to consider arguments until they're right. And therefore, you put it on the ballot and you find out if the public is going to pass the referendum. Am I misreading what the Illinois Supreme Court has said? Again, Fletcher does say not with respect to a constitutional amendment, but with respect to a proposed ordinance that courts shouldn't consider the substance before it goes on the ballot. But again, that's rooted in premises. They're not part of Illinois law anymore. The idea that the amount of money at stake is too low for taxpayers, that's incorrect as a matter of current Illinois law. The idea that you could never enjoin an election, that's no longer correct as a matter of Illinois law. Has the Illinois Supreme Court overruled Fletcher? Well, again, in the Chicago Bar Association case, the court did recognize that the case presented an exception to Fletcher's general rule. That's not overruling the council. It's just saying there's an exception, the Fletcher exception, right? Well, Fletcher itself doesn't create that exception. Okay, my question was, has the Illinois Supreme Court overruled Fletcher? What's the answer to that? No, Your Honor, the Illinois Supreme Court hasn't expressly overruled Fletcher, but it hasn't recognized an exception to the rule stated in Fletcher. Such that Fletcher is implicitly overruled to that extent. And then, of course, you have the line of taxpayer standing cases where you had cases that said we've taken too narrow a view of taxpayer standing in the past. I believe that was the Papke decision overruling the Droste decision. And the Droste decision in taking its narrow view of taxpayer standing had cited Fletcher. So although the Illinois Supreme Court hasn't said we specifically overrule Fletcher on these points, it has in fact overruled the premises on which Fletcher relied. Okay. Now, of course, one might ask, well, if taxpayers have standing to challenge a proposed amendment for any type of constitutional violation, why do our examples from the Illinois Supreme Court pertain to the structural procedural limitation, not to any other limit in the state constitution? And there's an easy explanation for that. In general, proposed amendments to the state constitution can't violate the state constitution because by definition they would change the state constitution so that whatever the new amendment does would be constitutional under state law. But of course that's not true when citizens propose something that violates the structural and procedural limitation. And so that's the kind of state constitutional violation that's come up in the cases. This case involves a proposed amendment that would violate the federal constitution. So one might ask, why aren't there any cases where the Illinois Supreme Court has enjoined a proposed amendment based on a violation of the federal constitution? And there's an easy answer there too. Until now, the General Assembly hasn't been proposing amendments that would violate the federal constitution. The General Assembly hasn't proposed an amendment to limit people's speech or anything like that. In the Coalition for Political Honesty case, the taxpayer plaintiffs challenged amendments not only based on the structural and procedural rule, but also under the federal equal The circuit court didn't address the federal constitutional issues because it didn't have to. It acknowledged that the argument that those claims weren't right, but it didn't address the merits of that argument. It could resolve the matter by addressing the structural and procedural question, and so it simply did so. But in doing so, it didn't say that the circuit court shouldn't have considered the federal claims. It just didn't pass on the question at all. Of course, respondents rely in addressing the merits. The respondents don't say that the preemption argument is wrong. They don't really dispute the merits of the preemption question of the supremacy clause violation question. But they rely heavily on the standard for a facial constitutional challenge. The idea that you have to show a law would be unconstitutional in all of its applications to succeed on a challenge that's facial rather than as applied. But that rule isn't as broad as the respondents would like it to be. The Burns case shows why. In that case, you had a flat ban on carrying firearms that applied to nearly everyone. And the state said, well, we can apply this to felons because the Second Amendment doesn't protect felons' right to carry a firearm. And the Illinois Supreme Court said, no, you didn't enact that law. You enacted a law that applies to everybody. And we can't rewrite the law to make it narrower, to make it constitutional. And we have the same situation here. You can't give all employees a right to collective bargaining. And a court can't rewrite the amendment to make it constitutional by saying, well, actually, it'll only apply to public sector workers. But it's a little overstatement to say that the end result here is a question of constitutionality. It arises from our constitutional system and it invokes the supremacy clause, but it's an act of Congress. It's a conflict with an act of Congress, which Congress could repeal. Right. So are we really being accurate in referring to the conflict here as one of constitutionality? It violates no specific clause of the Constitution. It violates a statute, which implicates the supremacy clause. Are you overstating it? No, Your Honor. The case law says that a law that is a state law that's preempted by federal law violates the supremacy clauses and is invalid. Of course, it's different. It's a different sort of constitutional violation. Right. But the conflict doesn't come from the supremacy clause. The supremacy clause resolves the conflict. There is no conflict with any provision of the U.S. Constitution. The conflict is between this amendment and you have a good case on the conflict. But the conflict is between this amendment and a federal statute. The supremacy clause tells us how to resolve it. It doesn't create the conflict. It's true that the supremacy clause standing alone doesn't invalidate this. But the way you determine whether there's a supremacy clause is to look at the conflict between federal and state law. And if there is a conflict or if there is preemption, then the state law is unconstitutional and it is invalid. I see that my time is up. Okay. Justice Doherty, if you have another question, we can give him. I'm good. Okay. Well, Mr. Hubert, thank you for your argument. You'll have rebuttal. Mr. Hammer, you may proceed. Good morning. May it please the court. Deputy Solicitor General Alex Hammer for the Secretary of State and the Comptroller. The circuit court correctly denied petitioners leave to file a taxpayer complaint seeking to remove a proposed constitutional amendment from the November ballot. That court's careful and thorough opinion identifies multiple independent reasons why petitioners claims fail as a matter of law. First, petitioners claims are not justiciable under Fletcher against Paris, because the improperly treat as law, a proposed amendment that has not yet been approved and may never be approved by Illinois voters, and they fail on the merits, because the proposed amendment is not spatially preempted by federal law. Mr. Hammer, can you explain why the case of Illinois Supreme Court case Coalition for Political Honesty, the exception recognized in that case to Fletcher does not apply here. Sure. So, the court in Coalition for Political Honesty, sort of recognizes the Fletcher rule, it states that the state has invoked it, and then it spends about five pages kind of describing why a claim like the claim in Fletcher in in coalition, excuse me, a procedural claim that the process for amending the Illinois Constitution isn't being followed is different than the kind of claim considered in Fletcher, it looks at treatises, it looks at case law, it looks at even the transcripts of the constitutional amendment convention, and it says essentially that a person, you know, a claim that the process for amending the Illinois Constitution is different, a claim like that is right. Whereas a claim that goes to the substance of a proposed constitutional amendment isn't. And so I think petitioners are just kind of wrong to suggest that coalition know actually read you know carved this large exception out for all claims involving proposed constitutional amendments, the court in coalition is quite clear that what it's doing is carving out a narrow exception for these kinds of procedural claims, and nothing in the Supreme Court subsequent opinions nothing in Chicago bar nothing in hooker, you know suggests any intent to expand that limited exception to Fletcher's rule. Beyond the scope of what the court in coalition said it's doing. And it's clear that petitioners claim here is not the kind of claim that the court considered in coalition, it's not a claim that the process of amending the Constitution isn't being followed I think appellant's counsel kind of conceded that he said you know the requirements of section 14 are being are met here. You know, they want to, they want to kind of prematurely attack the substance of the amendment, but they don't have the right to do that until it actually becomes a law. You know, in the briefs petitioners arguments, you know sort of sound in well Fletcher isn't good law anymore Fletcher has been overruled, but I think petitioners real argument goes to your question. Justice Harris, which is, you know, whether their claim fit in that code fits in that exception that the Supreme Court identified in coalition, and they just don't. I don't think petitioners have a good response to that. They don't certainly talk about coalition very much in the brief they haven't talked about it very much today. I think their central argument is really, you know that kind of all of this is irrelevant, because they have standing as taxpayers under section 11303 and Fletcher kind of rests on this outdated view of standing. You know, I don't think that's right for several reasons. For one Fletcher. It doesn't rest solely or even kind of primarily on a standing holding. It's true that the court talks about standing here and there it contains some language about the kind of trifling injury that petitioner that the taxpayer plaintiffs they were experiencing. But if you look at the last two paragraphs, it's clear that the cases holding rests primarily on kind of equitable ripeness principles, the idea that, you know, a court won't interfere with the lawmaking process by declaring invalid a proposal and that hasn't yet become a law. And that has nothing to do with standing and I think that holding makes sense because we're otherwise, you know, taxpayers could use section 11303 to challenge a proposed bill that has been passed by one house of the General because the law would be problematic, you know you can you can cut off that process now. And that's just not right. You know, sort of going back to petitioners arguments on a very basic level, it is just not really relevant whether petitioners have standing, we agree that petitioners have standing under section 11303, but the fact that a party has standing doesn't mean that he or she has a jurisprudential barrier to suit including the kind of ripeness considerations that Fletcher rests on. So petitioners kind of return over and over again to the standing question, I think just misses the point because standing doesn't get them where they need to go. You know petitioners other kind of justiciability argument I think is the one that we've discussed. Just the coalition kind of doesn't mean what it says that all the court was doing there was addressing the plaintiffs procedural claim before it addressed their substantive claims but that's, that's just not a plausible reading of coalition. I mean the court in coalition as I said spends, you know, something like five pages talking about the, the why it's appropriate for courts to jump in in the particular kind of, you know, case that the claims that the court had in front of it I mean that's pages 459 to 464. You know at bottom petitioners just want coalition to say something that it doesn't it wants the court to kind of rewrite Fletcher or rewrite coalition but the court can't do that it has to apply the law as set out by the Supreme Court. I'm happy to talk about more about Fletcher or ripeness or any of these kinds of justiciability principles. If the court has questions on them. And if not, I'll turn to the merits of the. I would ask you this Mr hammer seems as though we're betwixt in between Supreme Court, clearly moved away from some of the provisions of Fletcher. But neither did the court overrule Fletcher. Are we put in the position of trying to articulate a rule, as far as what remains of Fletcher, or do you think that rule exists for our benefit already. I think that petitioners have conceded that the real question before the court isn't kind of what remains of Fletcher in the abstract, but whether their claim fits into the exception set out in coalition and applied in Chicago bar and hooker. So I think the question before the court is just that one is to kind of examine coalition which is where the kind of, you know, exception is detailed and Chicago bar and hooker to the extent they kind of apply it and and decide whether in fact their claims fit in that exception, I don't think the court has to kind of, you know, go into these more abstract questions about what remains of the rest of Fletcher. Thank you. So I do want to address the merits of the claim, you know, so that on the merits. The circuit court correctly held that petitioners facial preemption claim fails because and then that one has multiple non preempted applications and that alternative holding, you know, provides an independent basis for the court to affirm. At the threshold, you know, the court was right to read petitioners challenge as a facial challenge, hold them to the high standard that applies in those cases. I don't think petitioners have you know disputed that here petitioners are taxpayers, they're not employers, you know, be directly impacted by amendment one if it if it is approved by voters and the relief that they seek is in order setting aside amendment one in its entirety, preventing it from going to the voters at all. This fall, they can order kind of exempting them as individuals from amendment. So that's kind of the definition of a facial challenge. And as a result, petitioners. Quote, no circumstances exist under which amendment one would be valid. That's the Supreme Court's decision in Napleton, but it's a standard that the Supreme Court applied, you know, for decades petitioners cannot make that showing I mean they they really they don't even really attempt to make that showing. As we explained in the brief and it's the circuit court held there are multiple significant non preempted applications of amendment one or there there would be if amendment one were to become law. Make sure I keep that in mind, you know, for one amendment one would confer significant constitutional rights on public sector employees rights that would best immediately upon the upon its, its enactment, the federal RA as petitioners can see amendment one prohibits as a matter of law, the state constitutional law any government state or local from enacting a so called right to work policy, and the NLRA expressly allows states to decide whether to adopt these policies and amendment one simply kind of makes that decision for Illinois and its municipalities. So petitioners can and I think don't dispute that amendment one has these effects, but that concession, I think is fatal to their facial preemption claim. You know petitioners only response I think to the right to work point which comes in the last paragraph of their reply brief, is that even if this aspect of amendment one is is not preempted that doesn't matter because they are still injured as taxpayers from having amendment one put on the ballot. But that's, that's not correct I mean that presumes the conclusion that their facial preemption challenge has merit, and because and then that one is not facially preempted their claim fails and they are not injured. You heard some of this again today the idea that you know any unconstituted a single kind of unconstitutional application of a broadly applicable law or proposed constitutional amendment is enough for a taxpayer to kind of prevent it from reaching the voters at all. That is a radical, that is a radical proposition you know I mean that that means that, you know, a, the legislature or citizens, you know, putting together a citizen petition have to kind of see around every possible unlawful application in order to kind of, you know, get the get the amendment put to the voters in the first place petitioners can't say a single case that rests on that note, the understanding of the law and it would be crippling to the state's ability to amend its constitution. In the first place. Petitioners also invoke the burns case, you know, I'm happy to talk about the burns case. If the court is interested I mean at a high level burns concerned a law that was sort of the opposite of amendment one, you know, the burns law, just a firearms law was unconstitutional as written on its face, I mean you just read it and it was on it was, it was violated the Second Amendment. Here amendment one is constitutional as written it just uses kind of broad language that petitioners say has the result of, you know, creating some unlawful applications. That's not, you know, that's not the same as in burns and we're petitioners kind of view of burns right that it sort of creates this it sort of flips the default on on facial challenges, you know, under which kind of everything is unconstitutional unless if there's even a single unconstitutional application. Again, that would kind of radically transform the nature of constitutional adjudication in the state more broadly and we know it's not true because the Illinois Supreme Court has cited and relied on the idea that the ordinary political and legal process that follows the proposal of a new constitutional amendment. You know they think because there may be some cases in which amendment one would have no legal effect. The courts should sort of cut off the political process now and spare voters from having to decide whether it should come part of the Illinois Constitution and sparing private parties and courts the work of fleshing out its meaning if it's passed, but the court should decline that invitation I mean constitutional amendments like amendment one, maybe broadly written look at the Bill of Rights to the US Constitution or some of the Bill of Rights to the Illinois Constitution, that breath is not a legal defect it does not entitle a taxpayer to kind of, you know, circumvent the political process. You know at the get go. They may dislike amendment one, they may think it should not become the law but their remedy is to is to vote for it, vote against it, excuse me, or to advocate against it, and not to have the courts kind of set it aside at this juncture. I'm happy to, you know, take any questions that I counsel I have a question. In his brief Mr Hubert argues your position you're taking would permit all of this read an unconstitutional proposal, such as an amendment prohibiting criticism of the governor on the ballot as long as the proposal was approved by the General Assembly, is he right. So, it's a fair question Justice Turner I'm some state courts have a version of the Fletcher rule, that's a little different than accounts for this possibility and these states allow courts to kind of peek at the merits and enjoying the publication of a proposed constitutional amendment, you know, during the process, if the amendment is kind of clearly and flagrantly unconstitutional like the one that you described or that Mr Hubert described earlier. So for instance, I think Florida has this rule. 1930s case called gray against Winthrop. But anyway, there's a discussion of some of this case law in an American law reports entry that is cited in coalition, which has some additional discussion of it, that question whether Illinois would recognize that kind of exception for a truly egregiously unconstitutional, you know proposed amendment like one that you know allow like permitted slavery or something like that that hasn't come up because none of the cases on this issue has considered a proposed amendment like that. And the question isn't relevant here either because, as we've discussed, and then one is not only not clearly and fragrantly flagrantly excuse me unlawful it's not unlawful at all. So, you know, I don't think anything the court says here would bear on the question of like, what would happen if the General Assembly tried to pass something as radical as that. Well, so he might be right then because my question was was the position that he stated in on page 16 was brief. My question was, is he correct in making that statement are you saying, possibly then, I think, I think the case law isn't clear on it and I think it there's at least an avenue for a court to conclude that no he's wrong. But I don't think that question is before the court here because, you know, this is not an amendment that would do something as outrageous as that. Would that type of amendment be more subject to a facial challenge, and perhaps, therefore, fit that distinction a little bit differently. It might, you know, it might. I mean something that you know on its face again kind of was obviously in contravention of like a provision of the US Constitution, I think might be more amenable to a facial challenge yes. The only other point I wanted to really briefly address is petitioners say you know they have three points standing in the merits and then this this fraud idea which we didn't really discuss very much, I guess they just wanted to kind of, you know, say they have a violation or an alleged violation of the free and equal clause like that's the only legal hook I think for a fraud claim like that, but petitioners haven't brought a fraud claim I'm their complaints their proposed complaint is alleges a preemption claim, not a violation of the free and equal clause so if they wanted to make that claim, they should have proposed a complaint in the first instance, with that claim. So I just don't think that is before the court at all. So, with that we asked that the court affirm the circuit court's decision denying leave to file petitioners complaints. Okay, thank you, Mr hammer Mr Hubert do you have any rebuttal. Yes, Your Honor. The respondents argue as though the petitioners are arguing that be that amendment one has some limited aspect in which its application would be unlawful, as though we've picked out some little thing that would be an unlawful application of it, but in fact amendment one would be unconstitutional as applied to the overwhelming majority of employees it covers private sector employees constitute about 86% of the workforce in Illinois, and most of them are covered by the NLRA, and this amendment proposed to give all those people collective bargaining rights, when in fact, under the supremacy clause, it can't give any of them collective bargaining rights. And so when most voters see amendment one on the ballot, they're going to think that amendment one would give them personally collective bargaining rights because that's what it says. So if a voter is a private sector employee the voter might think more rights for me, sure I'll vote for that why not. But that same voter might view the amendment quite differently if it said that it was only giving collective bargaining rights to public sector workers. And so, under the respondents view of amendment one the respondents argument that well this is okay because you could apply it to public sector workers. It means that it's okay that amendment one would tell voters that they're voting on one thing, which is rights for all when really they'd be voting on a different thing, which is rights for a few. And so yes, legal basis for that being part of our consideration that that misleading character. Well, accepting the view that it's that this should go on the ballot, because of its constitutional application to public sector workers would condone a violation of the free and equal elections clause, because it would allow the General Assembly to mislead voters in the way that they've done here. And it's, and yeah, and so it does appear to be, it is a fraud on the voters, and it's hard to see that fraud is anything other than intentional. The General Assembly is familiar with I'm sure with the National Labor Relations Act and the fact that they can't lawfully established collective bargaining rights for private sector workers, but they put it in there anyway. One might think because that's going to be appealing to a lot more people than an amendment that only actually addresses public sector workers. And then as we pointed out in our brief you see the amendments proponents out there saying this is going to give rights to all workers in Illinois, specifically including private sector workers. And that's a reason why the remedy petitioners seek here is proper amendment one is fundamentally contaminated by its constitutional defect. You can't fix that defect, without changing the amendment to mean something drastically different from what it says. And of course the court can't literally change what amendment one says to fix that according to the court can't order the respondents to rewrite the text to eliminate this problem. So the only remedy is to stop this from going before voters at all. And then if the General Assembly wanted to propose an amendment that doesn't have this defect it could do so. The respondents also compared the what the petitioners seek here to trying to intervene in the legislative process trying to get a bill declared unconstitutional before it's passed out of the General Assembly, or before it's been signed by the governor. This isn't comparable to that, because here the General Assembly's work is done. And so this proposed amendment is in the same posture as the proposed amendments in Chicago Bar Association and Hooker, where the process to put it on the ballot has been completed. And now the question is whether that it should actually go on the ballot, based on its unconstitutionality. And of course, if someone were circulating petitions for something that was unconstitutional, for an amendment that was unconstitutional, a court couldn't enjoin that, that would be a violation of their First Amendment rights, and a court can't enjoin the legislature's as those cases illustrate for the court to intervene at this stage of the proceedings to prevent taxpayers be it from being forced to pay to put an unconstitutional and highly deceptive measure on the ballot. So the court should reverse the circuit court's denial of the taxpayers petition and allow their challenge to proceed so they can obtain injunctive relief before it's too late. Okay, thank you, Mr. Hubert. Thank you, Mr. Hammer. You both stated your positions well, we appreciate your arguments. The case is now submitted, and the court will stand in recess.